**No. 23-15685**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

TIMOTHY PAUL OLMOS,

Plaintiff–Appellant,

v.

MICHAEL CIMINO, ET AL.,

Defendants–Appellees.

---

On Appeal from a Final Judgment of the
United States District Court for the District of Arizona
Case No. 20-cv-00034, Hon. G. Murray Snow

---

### REPLY BRIEF

---

Madeline Meth
BOSTON UNIVERSITY APPELLATE
   CLINIC
765 Commonwealth Ave.
Suite 1304
Boston, MA 02215

Ciara Gerendas
Noah Goldstein
Eli O'Neal
   Student Counsel

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org
jimdavy@bu.edu

Pro Bono Counsel for Appellant

March 6, 2026

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities......................................................................iii

Introduction and Summary of Argument................................... 1

Argument ....................................................................................... 3

I.   Prieto and Hernandez violated Olmos's right to be free from unreasonable searches by conducting a suspicionless search of his cellphone. ............................................................................ 3

    A.   Under the totality of the circumstances, Olmos retains an expectation of privacy in his cellphone. ............................ 3

        1.   Pursuant to his status as a non-violent probationer, Olmos maintains a substantial expectation of privacy in his cellphone. ................................................. 5

        2.   Olmos's probation conditions do not clearly subject him to suspicionless searches of his cellphone, and the nature of cellphones only bolsters his expectation of privacy. ........................................... 8

    B.   Generalized concerns about prior offenses cannot justify suspicionless cellphone searches. ............................. 14

II.  Even if *Lietzau* could authorize a search barred by *Lara*, the *Lietzau* factors weigh in Olmos's favor............................. 18

    A.   Appellees concede that three of *Lietzau*'s eight factors cut in Olmos's favor................................................ 18

    B.   The majority of *Lietzau*'s other factors support Olmos's position, too................................................. 19

III. Appellees mischaracterize the record to manufacture consent. .................................................................................. 23

Conclusion.................................................................................. 26

Certificates................................................................................. 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bumper v. North Carolina*,
391 U.S. 543 (1968) ............................................................................ 24

*Carpenter v. United States*,
585 U.S. 296 (2018) ............................................................................ 13

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ............................................................... 3

*Motley v. Parks*,
432 F.3d 1072 (9th Cir. 2005), *overruled by*, *United States v. King*, 687
F.3d 1189 (9th Cir. 2012) (en banc) ................................................. 4

*Riley v. California*,
573 U.S. 373 (2014) ....................................................................... 12, 13

*Safford Unified Sch. Dist. No. 1 v. Redding*,
557 U.S. 364 (2009) ............................................................................ 10

*Samson v. California*,
547 U.S. 843 (2006) ......................................................................... 4, 9

*Schneckloth v. Bustamonte*,
412 U.S. 218 (1973) ............................................................................ 25

*Singleton v. Wulff*,
428 U.S. 106 (1976) ............................................................................ 23

*State v. Lietzau*,
463 P.3d 200 (Ariz. 2020) ............................................... 19, 20, 21, 22

*State v. Montgomery*,
566 P.2d 1329 (Ariz. 1977) ................................................................ 12

*Terry v. Ohio*,
392 U.S. 1 (1968) ......................................................................... 10, 22

*Thornton v. United States*,
541 U.S. 615 (2004) ............................................................................. 9

*United States v. Anderson*,
101 F.4th 586 (9th Cir. 2024) (en banc) ........................................... 16

*United States v. Camou*,
773 F.3d 932 (9th Cir. 2014) .............................................................. 12

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019) ............................................................ 12

iii

# TABLE OF AUTHORITIES—continued

**Page(s)**

*United States v. De Jesus Ventura,*
  565 F.3d 870 (D.C. Cir. 2009) ............................................................ 6

*United States v. Escamilla,*
  852 F.3d 474 (5th Cir. 2017) ............................................................. 26

*United States v. Gordon,*
  173 F.3d 761 (10th Cir. 1999) ........................................................... 26

*United States v. Jeffers,*
  573 F.2d 1074 (9th Cir. 1978) (per curiam) ...................................... 20

*United States v. Job,*
  871 F.3d 852 (9th Cir. 2017) .............................................................. 7

*United States v. King,*
  687 F.3d 1189 (9th Cir. 2012) (en banc) ............................................ 4

*United States v. King,*
  736 F.3d 805 (9th Cir. 2013) ..................................................... 5, 6, 8, 9

*United States v. Knights,*
  534 U.S. 112 (2001) ............................................... 5, 8, 9, 13, 15

*United States v. Lara,*
  815 F.3d 605 (9th Cir. 2016) .................................. 4, 5, 8, 9, 12, 15, 17

*United States v. Mata,*
  517 F.3d 279 (5th Cir. 2008) ............................................................. 26

*United States v. Smith,*
  30 F.3d 568 (4th Cir. 1994) .............................................................. 25

*United States v. Tompkins,*
  130 F.3d 117 (5th Cir. 1997) ............................................................. 26

*United States v. Williams,*
  No. 13-CR-00764, 2016 WL 47437 (N.D. Cal. Jan. 4, 2016) ................ 7

*United States v. Wilson,*
  895 F.2d 168 (4th Cir. 1990) ............................................................. 25

*Warden, Md. Penitentiary v. Hayden,*
  387 U.S. 294 (1967) ......................................................................... 22

*Wooden v. United States,*
  595 U.S. 360 (2022) ........................................................................... 7

**Statutes**
Ariz. Rev. Stat. Ann. § 13-706(F)(2) ....................................................... 6

## TABLE OF AUTHORITIES—continued

**Page(s)**

**Other Authorities**

R. Karl Hanson et al., *High-Risk Sex Offenders May Not Be High Risk Forever*, 29 J. Interpersonal Violence 2792 (2014) .............................. 17

Richard A. Posner, *The Uncertain Protection of Privacy by the Supreme Court*, 1979 Sup. Ct. Rev. 173 ............................................................. 7

## INTRODUCTION AND SUMMARY OF ARGUMENT

In their Supplemental Answering Brief, Appellees assert a maximalist position: Probation officers can search probationers anytime, anywhere, and without suspicion. Appellees ask this Court to backtrack on its own caselaw and eviscerate Fourth Amendment protections because they decided to search the photo gallery on Olmos's cellphone after he received a call from an auto insurance agent, even though the terms of his probation did not authorize such a search.

The Supreme Court recognizes that probationers still retain Fourth Amendment protections while serving their sentences. This Court has itself held that probationers retain a substantial privacy interest in their cellphone data that can only be overcome by a sufficient and particularized government interest. Further, only a clear and unambiguous search term can reduce a probationer's expectation of privacy. Appellees attempt to handwave away Olmos's expectation of privacy in his cellphone by conflating the legal consequences of probation and parole, misstating the terms of Olmos's probation, and ignoring precedent that guards against intrusions on private cellphone data. Additionally, Prieto and Hernandez fail to identify a government interest that justified their search. Appellees offer no evidence of suspicious activity by Olmos, and point to his underlying offense as the only justification needed for their search. This Court has foreclosed that argument, requiring at least some particularized suspicion to justify a

search of a probationer who has not otherwise agreed to undergo suspicionless searches. Therefore, Olmos's expectation of privacy outweighs any plausible government interest in Appellees' suspicionless search of his cellphone.

Appellees' alternate arguments for affirmance fare no better. They argue, wrongly, that *State v. Lietzau* should govern this case. But a state case cannot override U.S. constitutional protections, and even if it could, Appellees' argument fails on its own terms. Appellees concede that three of the eight *Lietzau* factors weigh in Olmos's favor, and most of the others similarly indicate that the search of Olmos's cellphone ran afoul of the Fourth Amendment. In a last-ditch attempt to salvage an unlawful search, Appellees insist upon their own version of hotly disputed facts to argue that Olmos consented to the search. He did not. This Court should reject Appellees' invitation to manufacture consent, and decline to create a Fourth Amendment escape hatch for officers reaching for post-hoc justifications for a bad search.

In conducting their suspicionless search of Olmos's cellphone, Appellees violated Olmos's reasonable expectation of privacy and his Fourth Amendment right to be free from unreasonable searches. This Court should reverse the District Court's grant of summary judgment.

# ARGUMENT

## I. Prieto and Hernandez violated Olmos's right to be free from unreasonable searches by conducting a suspicionless search of his cellphone.

In this Court, *United States v. Lara* supplies the controlling analysis for suspicionless searches of probationers' cellphones. Appellees' effort to resolve the inquiry through the Arizona Supreme Court's framework in *State v. Lietzau* is therefore misplaced. While states remain free to afford probationers greater protections under state law than the federal Constitution requires, they may not lower Fourth Amendment protections below the U.S. constitutional floor. *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir. 2013) ("The central premise of the Supremacy Clause is that federal law is superior to state law."). *Lara* sets the constitutional floor for cellphone searches of probationers in this Circuit by requiring officers to have at least some suspicion of a crime or probation violation. And *Lara* explains why this Court should reverse.

### A. Under the totality of the circumstances, Olmos retains an expectation of privacy in his cellphone.

In an attempt to sidestep binding precedent of this Court, Appellees try to conflate Olmos's sentence of probation with parole. Appellees claim that Olmos did not have any expectation of privacy, in part, because he is "for all intents and purposes" a parolee. Supplemental Answering Brief ("Supp. Ans. Br.") at 22. However, both the Supreme Court and this Court

3

reject conflating the legal status of parolees and probationers, recognizing that probationers have greater expectations of privacy than parolees. In *Samson v. California*, the Supreme Court held that "[p]arolees are on the 'continuum' of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." 547 U.S. 843, 850 (2006) (citation omitted). Before *Samson*, this Court used to equate the privacy interests of probationers and parolees. *See Motley v. Parks*, 432 F.3d 1072, 1083 n.9 (9th Cir. 2005), *overruled by*, *United States v. King*, 687 F.3d 1189, 1189 (9th Cir. 2012) (en banc). But following *Samson*, this Court sat en banc to reverse all its previous precedent that assumed probationers and parolees had the same privacy interest, and it held that probationers have greater expectations of privacy than parolees. *King*, 687 F.3d at 1189. Appellees' treatment of Olmos as a parolee, then, misses the mark. Olmos was sentenced to probation, and probationers, in contrast to parolees, retain a "substantial" expectation of privacy. *United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016).

Given that Olmos is a probationer and not a parolee, the Fourth Amendment requires balancing. In this Court, for probationers with at least some expectation of privacy, the Fourth Amendment test balances "the degree to which [the search] intrudes upon an individual's privacy and ... the degree to which it is needed for the promotion of legitimate

governmental interests." *United States v. Knights*, 534 U.S. 112, 119 (2001); *accord Lara*, 815 F.3d at 610. Building on *Knights*, this Court employs a multi-factor test that considers the totality of the circumstances, including: (1) the probationer's status as a probationer; (2) the clarity of the probation conditions or lack thereof; and (3) the nature of the contents of a cellphone. *See Lara*, 815 F.3d at 610. Each of these three factors demonstrates that Olmos maintained a reasonable expectation of privacy in his cellphone data.

1.    **Pursuant to his status as a non-violent probationer, Olmos maintains a substantial expectation of privacy in his cellphone.**

While people on probation for violent offenses face some diminishment of their privacy rights, other probationers retain that substantial expectation of privacy. When evaluating the effect of a probationer's legal status on their expectation of privacy, this Court considers whether the underlying offense of the probationer was violent or not. *Compare United States v. King*, 736 F.3d 805, 806 (9th Cir. 2013) (holding that search of probationer who agreed to suspicionless search term did not violate expectation of privacy when probationer's underlying offense was violent), *with Lara*, 815 F.3d at 612 (holding that search of probationer with non-violent underlying offense violated reasonable expectation of privacy). In other contexts, federal courts can certainly struggle to determine whether an offense is violent. *See, e.g., United States v. De*

5

*Jesus Ventura*, 565 F.3d 870, 873 (D.C. Cir. 2009) ("Distinguishing [whether an offense is violent or not] can be a complicated task."). Here, however, the answer is easier to find: The Arizona state criminal statutes inform Arizona probationers whether their offense is considered violent or non-violent.

This Court should reject Appellees' invitation to complicate a question that is already answered by state law. The Arizona legislature clearly delineated what criminal offenses it considers violent, which particularly matters in the balancing because it provides notice to probationers as they develop their expectations of privacy. Appellees attempt to conflate Olmos's conviction with other offenses that it appears beside in the Arizona criminal code. Supp. Ans. Br. at 13-16. But, again, this Court looks narrowly to the offense of conviction to determine whether it was violent or not. *King*, 736 F.3d at 806. And under Arizona state law, convicted felons are eligible for sentencing enhancements if their offense was a "violent or aggravated felony," which the law defines as the offenses listed in Section 13-706(F)(2). Olmos's offense under Section 13-1404 is not listed in this statutory definition of a violent offense. Ariz. Rev. Stat. Ann. § 13-706(F)(2). Thus, within the meaning of Arizona state law, Olmos was not convicted of a violent offense. *See id.* This is an unambiguous classification from the legislature on what offenses it considers violent or non-violent within the state. Where this Court has not outlined whether a particular offense is violent or not, state

legislatures through their criminal codes can provide guidance to this Court and inform a probationer's expectations of privacy. *See, e.g.*, *United States v. Job*, 871 F.3d 852, 860 n.2 (9th Cir. 2017) (referring to California Health and Safety Code, enacted by legislature, to hold underlying offense was not a violent felony). So Olmos, as a probationer with a non-violent underlying offense as defined by Arizona state law, retains a "substantial" expectation of privacy similar to other non-violent probationers.

Even if there were any ambiguity as to whether Olmos's underlying offense is violent or not, this ambiguity should be construed in favor of Olmos having an expectation of privacy. Ambiguity concerning the scope of a criminal sentence "should be resolved in favor of liberty." *Wooden v. United States*, 595 U.S. 360, 396-97 (2022) (Gorsuch, J., concurring). Narrow construction respects the scope of notice the Arizona legislature gave to defendants when it categorized the offense. This matters because whether an individual "will or will not have such an expectation [of privacy] will depend on what the legal rule is." Richard A. Posner, *The Uncertain Protection of Privacy by the Supreme Court*, 1979 Sup. Ct. Rev. 173, 188. District courts in the Ninth Circuit have occasionally expressed uncertainty on whether underlying offenses are violent or not for the purposes of *King* and *Lara*'s Fourth Amendment analysis. *See United States v. Williams*, No. 13-CR-00764, 2016 WL 47437, at *2 (N.D. Cal. Jan. 4, 2016). ("I am not sure that this case falls within the scope of the

Ninth Circuit's decision in *United States v. King* given the difference in the nature of the underlying convictions." (citation omitted)). If even some federal judges are unsure of whether an offense type diminishes a probationer's privacy expectations, a probationer surely does not have clear notice that his expectation is reduced. Under the circumstances, absent clear notice to Olmos that the nature of his offense would reduce his privacy expectation so much to allow fully suspicionless searches, this Court should decline to construe any ambiguity against his liberty.

> **2.    Olmos's probation conditions do not clearly subject him to suspicionless searches of his cellphone, and the nature of cellphones only bolsters his expectation of privacy.**

Perhaps the most important factor—whether a probationer has accepted a clear and unambiguous term of probation that authorizes the search at issue—also weighs in favor of Olmos here. A probation condition permitting searches of a probationer's property will only diminish a probationer's expectation of privacy when the condition is "clearly expressed" and the probationer is "unambiguously informed of [the condition]." *See Knights*, 534 U.S. at 119-20; *accord Lara*, 815 F.3d at 610. This is especially true regarding searches of cellphones given the revealing nature of the information they contain and the attendant Fourth Amendment protections for cellphone data. *See Lara*, 815 F.3d at 611. Olmos has not accepted a probation condition that authorizes

suspicionless searches of his cellphone and thus retains an expectation of privacy in his cellphone.

First, Appellees cannot simply point to the mere existence of the general terms of Olmos's probation or regulations to justify their search. "The weakness of this argument is that it assumes that, one way or another, the search must take place." *Thornton v. United States*, 541 U.S. 615, 627 (2004) (Scalia, J., concurring). Appellees fail to point to a specific condition that clearly informs Olmos (1) that his cellphone may be searched pursuant to his terms of probation and (2) that an officer may search his cellphone without suspicion. *See Knights*, 534 U.S. at 114, 119-20; *Lara*, 815 F.3d at 609-12.

The difference between a warrantless search and a suspicionless search matters here. Importantly, probation officers only have additional latitude to search probationers because of a clear search term of probation. Without a clear search term, the search would be subject to a traditional Fourth Amendment analysis. *See Knights*, 534 U.S. at 119-20 (relying on search condition to reduce probationer's expectation of privacy). That is why, over and over again, courts only look to the search term, not the other terms of probation, to determine if a probationer's expectation of privacy was so reduced as to justify a suspicionless search. *See, e.g.*, *id.* at 114, 116, 119-20; *Samson*, 547 U.S. at 848-54; *King*, 736 F.3d at 808-09; *Lara*, 815 F.3d at 610-12. Absent such a justification, officers need to point to at least some suspicion; the Supreme Court has

9

consistently refused to allow warrantless searches to proceed entirely without suspicion. *See, e.g.*, *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009); *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Appellees fail to identify probation conditions sufficiently clear to reduce Olmos's expectation of privacy in his cellphone to nothing. True, under Uniform Condition of Probation 4, Olmos agreed to "[s]ubmit to search and seizure of [his] person and property by the APD without a search warrant." 2-ER-64. But again, warrantless is not the same as suspicionless, and Appellees do not contend that this condition provides them with the authorization to search his cellphone without suspicion. Supp. Ans. Br. at 11-12. After failing to point to a search condition authorizing fully suspicionless searches of cellphone data, Appellees try, unsuccessfully, to cobble together various general probation conditions— conditions that do not mention searching Olmos—to justify their search. Supp. Ans. Br. at 11-12. But ultimately, the lack of a clear term authorizing fully suspicionless searches dooms Appellees.

Nor can Appellees save the lack of a clear search term by referencing probation regulations. Appellees point to Maricopa County Adult Probation Department regulations to claim that Olmos's cellphone may be searched. Supp. Ans. Br. at 10-11. However, Appellees misstate the facts. Appellees emphasize, and even "super-emphasize," the Maricopa County Adult Probation Department's definition of a "personal computer" to argue that this clearly informed Olmos that his cellphone was subject

10

to suspicionless searches. *Id.* However, their super-emphasis is misplaced. The definition of personal computer that they cite is "[p]ursuant to Uniform Condition 21." 3-SER-373. Olmos was not sentenced to Uniform Condition 21. 2-ER-65. Therefore, this definition is not a term of his probation and thus does not have any relevance to his expectation of privacy.

Neither, as Appellees contend, do the guidelines pursuant to Special Condition of Probation 15 provide sufficient clarity to authorize their search of Olmos's cellphone. Unlike Uniform Condition of Probation 21, Olmos was actually sentenced to Special Condition of Probation 15. 2-ER-67. However, this is equally unavailing because the guidelines pursuant to Special Condition of Probation 15 do not authorize probation officers to search Olmos's cellphone without suspicion. Under Special Condition of Probation 15, Olmos must abide by the Maricopa County Adult Probation Department's computer usage guidelines. 2-ER-67. Under these guidelines, Olmos must "permit monitoring ... of any personal or professional computer." 2-ER-69. However, these guidelines have been unchanged since they were promulgated before Olmos first received them in 2005—long before the convergence in form and function of computers and cellphones. *See* 2-ER-69. At that time, cellphones and computers were drastically different types of devices. Other aspects of the guidelines reflect that. Special Condition of Probation 15 also limits probationers to "possessing one computer at the[ir] residence" and only

discuss phones in relation to "phone records, credit card bill/statements, transaction records, and any other documentation." 2-ER-69. These guidelines, read in context, refer to desktop or laptop computers, not cellphones. Accordingly, the guidelines pursuant to Special Condition of Probation 15 lack the clarity needed to reduce Olmos's expectation of privacy in his cellphone.

If anything, these guidelines only underscore how cellphones have evolved since these guidelines were first devised—and the importance of a person's privacy interest in cellphone data. Because of the information cellphones contain, this Court looks for clear authorization to specifically search a cellphone. *See Lara*, 815 F.3d at 611. A cellphone stores a wealth of private content, as emphasized in numerous decisions of the Supreme Court and this Court. *See Riley v. California*, 573 U.S. 373, 396-97 (2014); *Lara*, 815 F.3d at 611-12; *United States v. Camou*, 773 F.3d 932, 943 (9th Cir. 2014); *United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019). This Court should look askance at Appellees' contention that "[t]he nature of cell phone usage ... has no relevance to the legal issues presented here," Supp. Ans. Br. at 11, particularly where Appellees base that assertion on a single old case that nearly predated the very existence of cellphones. *See id.* (citing *State v. Montgomery*, 566 P.2d 1329 (Ariz. 1977)). In the decades since *Montgomery*, courts to have considered modern cellphones have emphasized that the nature of the information they contain—and what that information can reveal about people—

12

makes it especially important to guard against Fourth Amendment violations. *See, e.g.*, *Riley*, 573 U.S. at 393; *Carpenter v. United States*, 585 U.S. 296, 309-10 (2018).

Even assuming that Olmos's cellphone could have been covered by Special Condition of Probation 15, however, Appellees fail to demonstrate that Olmos's cellphone could be searched without suspicion. Probation conditions must clearly express under what conditions a search of a probationer could take place. *See Knights*, 534 U.S. at 114, 119-20 (permitting search based upon reasonable suspicion when probation terms permitted searches "with or without a search warrant, warrant of arrest or reasonable cause"). As noted, under Uniform Condition of Probation 4, Olmos agreed to warrantless searches, not suspicionless searches. 2-ER-64. Here, Special Condition of Probation 15, read in the context of Uniform Condition of Probation 4, does not authorize a suspicionless search of Olmos's cellphone. 2-ER-69. Permitting a suspicionless search of Olmos's cellphone pursuant to Special Condition of Probation 15 would render meaningless Olmos's agreement only to warrantless searches under Uniform Condition of Probation 4—and render illusory the protection a warrant provides against fully suspicionless searches.

***

Under *Lara*'s test, all the factors support Olmos's position. First, Olmos, a non-violent probationer as defined by Arizona state law, retains

the same expectation of privacy as other non-violent probationers. Second, Olmos did not accept a term of probation that clearly and unambiguously informed him that he was subject to suspicionless searches of his cellphone. Third and lastly, Olmos's heightened privacy interests in his cellphone bolster the conclusion that the search intruded on Olmos's privacy in this case. Therefore, Olmos maintains a substantial expectation of privacy in his cellphone.

**B. Generalized concerns about prior offenses cannot justify suspicionless cellphone searches.**

Prieto and Hernandez cannot save their suspicionless search merely by pointing to Olmos's underlying offense. Appellees repeatedly emphasize the nature of Olmos's conviction and offer generalized justifications for imposing search conditions on probationers convicted of crimes against children. But they do not contend that the probation officers had any particularized reason to believe that Olmos's phone contained evidence of a probation violation at the time of the search. The record contains no such evidence, as the District Court expressly noted. 1-ER-14 ("[T]here is no evidence of Plaintiff's suspicious behavior, and it is surely commonplace for anyone to silence a ringing phone while in the middle of a meeting."). Instead, Appellees essentially ask the Court to accept that the nature of Olmos's underlying conviction alone provides a sufficient governmental interest to justify a suspicionless search of a cellphone. *United States v. Lara* forecloses that approach. As *Lara*

explains, probationary searches serve at least two related government interests: reducing recidivism and facilitating a probationer's reintegration into the community. 815 F.3d at 612. The strength of these interests in any given case depends on whether the government has a specific reason to believe that a particular probationer is reoffending or otherwise undermining his successful reintegration. *Id.* And at no point have Appellees claimed that their suspicionless search of Olmos's cellphone was meant to further these two governmental interests.

The relevant body of Fourth Amendment precedent clearly illustrates that the government must justify a search with more than a reference to the defendant's underlying offense. In *United States v. Knights*, the Supreme Court upheld a probation search where officers had reasonable suspicion that Knights had been involved in an arson. *See* 534 U.S. at 115, 121. By contrast, in *Lara*, this Court held that a missed probation meeting, conduct it described as "worlds away" from the misconduct in *Knights*, did not supply sufficient governmental interest to justify a search of a cellphone. *Lara*, 815 F.3d at 612. Here, Appellees can point to even less. They identify no act of noncompliance, no credible tip, and no particularized suspicion of wrongdoing by Olmos at the time of the search. Instead, they ask this Court to conclude that because Olmos was a probationer whose phone happened to ring, the government had a sufficient interest to search through his cellphone's photo gallery. That evinces a "search-first-and-find-ample-justification-later approach" that

15

this Court rejects. *United States v. Anderson*, 101 F.4th 586, 605 (9th Cir. 2024) (en banc) (Mendoza, J., concurring). Appellees' contention finds no support in precedent and is inconsistent with basic Fourth Amendment principles.

Because Appellees conducted a suspicionless search of Olmos's cellphone photo gallery based solely on the phone's ringing during a probation meeting, they attempt to justify the search by pointing to the nature of Olmos's underlying conviction and claiming they were entitled to search his phone to monitor compliance with his probation conditions. Appellees would confer on the government a sweeping power to search the cellphone, home, and other belongings of any sex offender at any time and for no particular reason other than to ensure he has not recidivated or violated a probation condition. Supp. Ans. Br. at 25-26. Even if we take this startling assertion of power on its own terms, empirical research undermines Appellees' effort to ground an ongoing governmental interest in suspicionless searches on generalized assumptions about inevitable sex offender recidivism. A meta-analysis of 21 studies following nearly 8,000 sex offenders for up to 31 years found that sex offenders' risk of reoffending "decreased the longer they had been sex offense-free in the community." R. Karl Hanson et al., *High-Risk Sex Offenders May Not Be*

*High Risk Forever*, 29 J. Interpersonal Violence 2792, 2807 (2014).[1] The study found that approximately 93% of "moderate risk"[2] offenders remained offense-free five years after release, and nearly 90% remained offense-free after ten years. *Id.* at 2802. The government's interest in searching Olmos cannot be based solely on conclusory assertions about the need to prevent sex offender recidivism.

As the District Court noted, "there is no evidence of Plaintiff's suspicious behavior, and it is surely commonplace for anyone to silence a ringing phone while in the middle of a meeting." 1-ER-14. But Appellees ask this court to find that they were entitled to search Olmos's cellphone anyway. That position stands in contrast to this Court's reasoning in *Lara*, which suggests that cellphone searches of probationers are unreasonable without some amount of suspicion that the probationer was committing a crime or violating a probation condition. *See* 815 F.3d at 612. Ultimately, because Appellees cannot identify any particularized reason for searching Olmos's photo gallery at the time the search occurred, they lacked a governmental interest sufficient to outweigh his

---

[1] *Available at*: https://saarna.org/wp-content/uploads/2021/05/Hanson-et-al.-2014-Not-High-Risk-Forever-JIV-1.pdf.

[2] Offenders' level of risk was determined according to Static-99R scores. *See* Hanson et al., *supra* at 2795. One unrebutted risk assessment calculated Olmos's Static-99R score as 1, 2-ER-57, and another calculated his score as 2, 2-ER-217. Hanson considers scores of 0-4 "moderate." Hanson et al., *supra* at 2795.

17

substantial privacy interest in the contents of his cellphone. Under this Court's precedent in *Lara*, the balance therefore tips decisively against the reasonableness of this suspicionless search.

## II. Even if *Lietzau* could authorize a search barred by *Lara*, the *Lietzau* factors weigh in Olmos's favor.

As discussed *supra*, this case should be resolved by applying *Lara*, which, unlike *Lietzau*, is a federal court decision and readily applicable in the Fourth Amendment cellphone search context. But Appellees' reliance on *Lietzau* is also wrong on its own terms. Even under the non-exhaustive list of eight factors in *Lietzau*, Appellees' search was unreasonable. Appellees maintain that *Lietzau*'s totality-of-the-circumstances framework "absolutely establish[es] the reasonableness of the [Appellees'] search of Olmos's cellphone and fully support[s] the District Court's decision to grant summary judgment in [Appellees'] favor." Supp. Ans. Br. at 20. But Appellees concede three of the eight *Lietzau* factors, *see id.* at 21-22, and at least all others but the first and fourth factors weigh in Olmos's favor here. Appellees ask this Court to apply the wrong test, and do not win even under that test.

### A. Appellees concede that three of *Lietzau*'s eight factors cut in Olmos's favor.

Appellees do not make arguments as to whether *Lietzau*'s sixth, seventh, and eighth factors support Olmos's position. Instead, Appellees rely on their view of the first five factors and contend merely that

18

"[f]actors 6-8 of the test did not have to be satisfied." Supp. Ans. Br. at 21. Absent any response to Olmos's arguments in the opening brief, these conceded factors—"the nature and severity of the suspected criminal offenses or probation violations giving rise to the search," "whether the suspected crimes or violations are the same as or similar to the crimes of which the probationer was previously convicted," and "the nature, source, and plausibility of any extraneous information supporting the search," respectively—cut in Olmos's favor. *State v. Lietzau*, 463 P.3d 200, 205 (Ariz. 2020).

### B. The majority of *Lietzau*'s other factors support Olmos's position, too.

Appellees do contest *Lietzau*'s first five factors, but a majority of even those factors weighs in Olmos's favor. For purposes of this Reply, we focus on whether the search is "conducted by a probation officer in a proper manner and for the proper purpose of determining whether the probationer was complying with probation obligations," whether "the search [is] arbitrary, capricious or harassing," and "the content and scope of the probation conditions." *Lietzau*, 463 P.3d at 205.

First, the search was not conducted in a proper manner for the proper purpose of determining whether Olmos was complying with probation obligations. Whether Appellees searched Olmos's cellphone for the proper purpose of ensuring compliance with a probation condition turns on if "the circumstances, viewed objectively, support such a finding." *Lietzau*,

19

463 P.3d at 205. Under this objective analysis, this Court has found that a search occurred in a proper manner in the probation context when a probation officer "had reason to believe that [the probationer] was violating his probation." *United States v. Jeffers*, 573 F.2d 1074, 1075 (9th Cir. 1978) (per curiam); *see also Lietzau*, 463 P.3d at 202 (noting officers possessed credible tip that Lietzau was engaged in an inappropriate relationship with a minor in violation of probation conditions).

Here, Appellees' search was divorced from any meaningful purpose, and certainly from ensuring compliance with probation conditions. As the District Court observed, "[Olmos] was complying with probation obligations by attending the meeting" at the time of the search. 1-ER-13. At the probation meeting itself, Olmos did not give Appellees any new reason to believe that he had violated any terms of probation. All Olmos did to prompt the search was silence his cellphone in response to an unexpected call from his auto insurance agent, and "it is surely commonplace for anyone to silence a ringing phone while in the middle of a meeting." 1-ER-14. Simply put, "[t]here is no ... evidence in the Record that [Olmos] was not compliant with probation conditions." 1-ER-13. In contrast, Lietzau impeded access to his residence, failed to participate in counseling and drug testing, and did not satisfy community restitution requirements. *See Lietzau*, 463 P.3d at 202. Thus, unlike the search in this case, the search in *Lietzau* reasonably followed strong concerns about compliance with a non-contact provision. Here, simply

20

silencing a ringing cellphone during a mandatory probation meeting does not give rise to an objectively proper purpose for a search.

Second and relatedly, were there any doubt, the arbitrary, capricious, or harassing nature of the search underscores that the search was conducted for an improper purpose. "Most often, determining whether a search was conducted for a proper purpose will resolve whether the search was arbitrary, capricious, or harassing." *Lietzau*, 463 P.3d at 207. Here, a reasonable jury could find that the search was arbitrary, capricious, or harassing because, as outlined in our opening brief, the jury could conclude that the search was motivated by Appellees' personal animosity toward Olmos. *See* Replacement Opening Brief ("Repl. Op. Br.") at 33-34. They could conclude that Appellees wanted to arbitrarily or oppressively demonstrate their power and authority over Olmos, *see id.* or that Appellees' post hoc characterization of Olmos's action of silencing his cellphone as "evasive" or "unnatural" was a false or misleading explanation and evidence of an unlawful motive, *see id.* at 34-35. Appellees fail to engage with these points, much less rebut them. Instead, Appellees simply plug in Olmos's name where Lietzau's appears in quotes from *Lietzau*, ignoring the considerable differences between the searches in *Lietzau* and in this case.

Third, Appellees' search of Olmos's cellphone was not authorized under Olmos's probation conditions; even if it was, the search delved deeper than reasonably necessary to ensure compliance with probation

conditions. Appellant would not belabor the lack of authorization, *see supra* at 8-14. But even if it were authorized, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)). *Lietzau* itself emphasizes the importance of scope in the specific context of cellphone searches. "Because a cellphone is a gateway to a massive amount of personal information ... probationary searches must be limited to data reasonably expected to contain information related to determining a probationer's compliance with probation conditions." *Lietzau*, 463 P.3d at 207 (citation omitted); *see also supra* at 11-12 (discussing significant privacy interest in cellphones). Olmos's probation conditions did not permit the search—and certainly not a suspicionless search—of his cellphone. *See supra* at 9-12. But even if it did, any suspicion occasioned by the in-meeting phone call would not justify the scope of the arbitrary search of Olmos's cellphone that Appellees conducted, outside any proper purpose of ensuring compliance with probation conditions.

***

The clear majority of the *Lietzau* factors indicate that the search of Olmos's cellphone ran afoul of the Fourth Amendment. *Lietzau* does not control, but Appellees' argument that they would win under *Lietzau* fails on its own terms.

22

## III. Appellees mischaracterize the record to manufacture consent.

Perhaps recognizing that their avowedly suspicionless search had no real justification, Appellees finally argue that they had consent. But this argument rests on a purported admission that Olmos consented to the search because Hernandez "politely asked" him for his cellphone. Supp. Ans. Br. at 27. That characterization misstates the record and provides no basis for affirming the District Court's grant of summary judgment.

First, Appellees' attempt to treat the purportedly "polite" nature of Hernandez's request as undisputed is unavailing. The District Court expressly rejected that assertion, noting there was "no evidence in the Record supporting [Appellees'] contentions that Hernandez 'politely requested' [Olmos's] phone, but even if there were, that would create a disputed issue of material fact that the Court would construe in [Olmos's] favor." 1-ER-9 n.4. Because the District Court did not ultimately reach the consent issue, this Court should not consider it for the first time on appeal, *see Singleton v. Wulff*, 428 U.S. 106, 120 (1976); but if it did, it should not disregard the District Court's proper construal of facts in favor of Olmos at summary judgment.

In any event, the record shows that Appellees are manufacturing a consent theory by wrenching a single response from its context. It is true that Olmos responded "Admitted" to Appellees' Statement of Facts No. 8, which asserted that "[a]fter [Olmos's] phone ceased to ring, Hernandez

politely requested to see [Olmos's] cellphone, and [Olmos] obliged by handing it to her." 4-SER-545; 3-SER-201. But when read alongside Olmos's other responses in the same document, he clearly disputed both the voluntariness of his compliance and the characterization of Hernandez's tone. For example, Olmos stated that he "was compelled to submit to the illegal search because he 'did not have a right to ignore his probation officers' requests'" (No. 21), and that "the only way that Hernandez was going to get [Olmos] to comply with her demand was to use language and a verbal tone that left no doubt in [Olmos's] mind that obedience without question was going to rule this situation" (No. 23). 3-SER-204. He also expressly disputed Appellees' Statement No. 24, which claimed that Olmos had not alleged "any kind of physical force, coercion, language, or even tone of voice" suggesting compulsion. 4-SER-547; 3-SER-204. At a minimum, these responses create a fact dispute contradicting Appellees' claim that the record establishes voluntary consent as a matter of law.

More importantly, Appellees' argument sidesteps the core inquiry required by consent doctrine. Consent analysis considers the power imbalance inherent in interactions between individuals and law enforcement. It does not operate according to rigid rules under which polite requests are never coercive or the act of handing over property necessarily reflects free and voluntary choice. *See Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (explaining the government's

burden of proving voluntary consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority"). Instead, courts must examine the totality of the circumstances to determine whether acquiescence to authority was the product of coercion or of genuine free will. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

Because no single factor is dispositive in consent inquiries, politeness alone is not enough to establish consent as a matter of law. An officer may speak politely while still conveying that compliance is mandatory, particularly to someone who reasonably believes they have no right to refuse. Olmos cannot be said to have freely consented without disregarding his consistent contention that he complied because he believed refusal was not an option. None of the cases Appellees cite compels a contrary result. Consent is a factual inquiry. *Schneckloth*, 412 U.S. at 227. And Appellees' authorities are largely inapposite for the inquiry here. None arise from the Ninth Circuit; many apply a Fifth Circuit-specific, multi-factor framework the Ninth Circuit has not adopted; only one involves a cellphone search; and none concerns probationers subject to the unique coercive pressures of supervised release. *See United States v. Smith*, 30 F.3d 568, 570 (4th Cir. 1994) (whether unlocking a car door constituted consent after consent was provided to search other belongings); *United States v. Wilson*, 895 F.2d 168, 172 (4th Cir. 1990) (whether a shrug constituted consent to a public

pat-down by a plain-clothes officer); *United States v. Gordon*, 173 F.3d 761, 764-66 (10th Cir. 1999) (whether handing over a key to a locked bag was evidence of consent after consent was provided to a luggage search at a train station); *United States v. Mata*, 517 F.3d 279, 290-91 (5th Cir. 2008) (applying a six-factor test not adopted by the Ninth Circuit); *United States v. Tompkins*, 130 F.3d 117, 121-22 (5th Cir. 1997) (same); *United States v. Escamilla*, 852 F.3d 474, 483-84 (5th Cir. 2017) (same). Appellees' attempt to characterize this case as a straightforward application of (non-binding) precedent therefore fails.

At most, Hernandez's tone is one factor in the consent analysis. Appellees' repeated emphasis on her purported politeness only underscores that a material factual dispute remains, particularly in light of Olmos's contrary assertions. Because material questions of fact exist, summary judgment on this issue is inappropriate, and this Court should decline Appellees' invitation to resolve that factual issue for the first time on appeal

## CONCLUSION

For the foregoing reasons, in addition to the reasons in the Replacement Opening Brief, this Court should reverse.

Respectfully submitted,

/s/ Jim Davy

Madeline Meth
BOSTON UNIVERSITY
   APPELLATE CLINIC
765 Commonwealth Ave.
Suite 1304
Boston, MA 02215

Ciara Gerendas
Noah Goldstein
Eli O'Neal
   Student Counsel

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org
jimdavy@bu.edu

Pro Bono Counsel for Appellant

March 6, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15685

I am the attorney or self-represented party.

**This brief contains** | 5,998 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Jim Davy | **Date** | March 6, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on March 6, 2026, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Jim Davy
Jim Davy