**WB**

Dennis I. Wilenchik
diw@wb-law.com

**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —
ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix Arizona  85004

Licensed in
Arizona, Texas, New
York, and the District
of Columbia

Telephone:  602-606-2810    Facsimile:  602-606-2811

May 5, 2026

**FILED VIA CM/ECF SYSTEM**
Molly C. Dwyer, Clerk
Office of the Clerk
United States Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, California 94119-3939

    Re:   *Timothy Olmos et al. v. Michael Cimino, et al.*
        United States Ninth Circuit Case No. 23-15685
        Appellees' Supplemental Letter Brief per the Order filed April 7, 2026
        • Argument scheduled for May 21, 2026: San Francisco, California

Dear Ms. Dwyer:

Defendants are submitting this Supplemental Letter Brief in compliance with the Court's Order filed on April 7, 2026 (DktEntry 131) ("Order"), seeking additional briefing on the Court's question of whether a conviction under A.R.S. § 13-1404 constitutes a crime of violence.

## INTRODUCTION

Based on the Court's reference in its Order to *United States v. King*, it appears that the larger issue being considered by the Court is whether it now needs to decide the question it did not reach in *King*: i.e., "whether the Fourth Amendment permits suspicionless searches of … lower level offenders who have accepted a suspicionless-search condition" as part of their probation. 736 F.3d 805, 810 (9th Cir. 2013).  To address that question, the Court seems to believe it must first determine

whether Appellant is a "lower level offender[] who accepted a suspicionless-search condition," as opposed to someone designated as a "violent felon" like Mr. King, who was also subject to that same probation condition.

Appellees respectfully submit that this question (i.e., whether Olmos's offense was technically a "crime of violence") is not and should not be viewed as dispositive of whether Olmos can make the claim that his Fourth Amendment rights were violated by Appellees' search of his cell phone. Indeed, the Court does not need to decide in this case the specific question it declined to address in *King* for one simple reason: even if Olmos does not qualify as a "textbook" violent felon under Arizona law, it cannot be plausibly argued that he belongs in the same category as non-violent "lower level offenders" like check forgers, non-violent thieves, or persons convicted of drug possession.

It is Appellees' contention that the real question here is whether a person convicted of a "dangerous crime against children" who has been sentenced to **lifetime** probation with specific monitoring conditions and the potential to be re-incarcerated for violating those conditions, has any reasonable expectation of privacy in photographs stored on his cell phone or any Fourth Amendment protection against a court-authorized, suspicionless search of his cell phone or his computer for the purpose of ensuring he is complying with the life-long probation conditions imposed by the sentencing judge and upheld by multiple appellate courts. The answer to that question is: <u>**No**</u>. Olmos had and has no such rights or expectations as

a matter of law and the District Court correctly entered summary judgment against him.

## **RELEVANT FACTS OF THE CASE**

Appellees have no desire to unnecessarily repeat their previous Statements of the Case in their Answering Brief and Supplemental Answering Brief. However, they believe it is crucial to note and emphasize certain facts that are highly relevant to the analysis and consideration of the additional issues set forth by the Court.

On August 20, 2004, Petitioner was indicted in the Superior Court of Arizona, Maricopa County, on one count of child molestation under A.R.S. § 13-1410, one count of sexual conduct with a minor under A.R.S. § 13-1405, and one count of sexual abuse under A.R.S. § 13-1404. *Olmos v. Ryan*, No. CV-11-344-PHX-GMS, 2012 WL 8466125, at *1 (D. Ariz. Dec. 19, 2012), *report and recommendation adopted in part*, No. CV-11-00344-PHX-GMS, 2013 WL 3199831 (D. Ariz. June 24, 2013); *see also Olmos v. Ryan*, 2014 WL 922867, at *3 (D. Ariz. Mar. 10, 2014) (denying Olmos's Petition for Habeas Corpus on all claims and accepting the Magistrate Judge's Second Report and Recommendation), *request for certificate of appealability denied*, 2014 WL 12972223, at *1 (9th Cir. Sept. 26, 2014), *reconsideration en banc denied*, (9th Cir. Feb. 6, 2015), *petition for writ of certiorari denied*, 577 U.S. 832 (2015).

Each count against Olmos qualified as a dangerous crime against children punishable under A.R.S. § 13-705. *See* A.R.S. §§ 13-1404(B), 13-1405(B), and 13-

1410(B). Following a trial, the jury found Olmos guilty of child molestation (a class 2 felony) and sexual abuse (a class 3 felony) but was unable to reach a verdict on the charge of sexual conduct with a minor (a class 2 felony), which was subsequently dismissed on the State's motion. *Olmos v. Ryan*, No. CV-11-344-PHX-GMS, 2012 WL 8466125, at *1.

On June 24, 2005, the trial court sentenced Olmos to a mitigated, fifteen-year term of imprisonment on the child molestation conviction. *Id.* The court suspended imposition of any sentence of incarceration on the child abuse conviction and placed Olmos on **lifetime probation** for that crime. *Id.* The court, however, expressly reserved the option "[p]ursuant to Arizona Revised Statutes section 13-901(C) … [to] revoke [Olmos's] probation in accordance with the rules of criminal procedure at any time before the expiration or termination of the period of probation" and to impose a sentence of incarceration "if the defendant commits an additional offense **or violates a condition [of his probation]."** [4-SER-574 (emphasis added)].

With respect to his lifetime probation, the court imposed specific conditions on Olmos including, among other things, a prohibition against having contact with minors or possessing sexually stimulating or sexually oriented material "**in any form**"—which obviously would include electronic form such as digital images or photos on his cell phone. [3-SER-368; 3-SER-370 (emphasis added)].

Olmos's lifetime probation conditions also specifically required him to submit to warrantless searches of his electronic devices, including his phone, to ensure his

compliance with the terms of his probation. Under Paragraph 15 of the "SPECIAL CONDITIONS OF PROBATION … ☑ Sex Offender", Olmos was required to "abide by the APD computer usage guidelines." [3-SER-370]. Those APD computer usage guidelines, entitled "Maricopa County Adult Probation Department Computer Conditions," specifically state that "**Probationer, as directed, will <u>permit</u> monitoring or seizure of any personal … computers.**" [3-SER-372 (emphasis and super-emphasis added)]. The term "Personal computer" is defined as "**any device owned or controlled by the probationer** and used for **personal purposes** … **including** … <u>**cell phone[s]**</u> …." [3-SER-373 (emphasis and super-emphasis added)].

Olmos acknowledged and accepted all those conditions by signing off on them on August 8, 2019, when he was released from prison after serving his sentence for child molestation and began serving the lifetime probation portion of his sentence. [4-SER-629-635]. Olmos's sentence, including his lifetime probation and the conditions imposed with it, has withstood his multiple appellate attacks and has been upheld in its entirety and unmodified by any tribunal, up to and including both the Arizona Supreme Court and the United States Supreme Court. Thus, Olmos's sentence of **lifetime** probation as a sex offender in accordance with Arizona law and the conditions associated with that probation have been thoroughly challenged multiple times by Olmos and reviewed by this Court as well as the United States Supreme Court and the Arizona Supreme Court and in every instance were found to be lawful, valid, and enforceable in all respects. Because those probation conditions

are valid and were the basis for the search in question, the District Court correctly held that Olmos had no basis to claim his rights were violated by that search as a matter of law. This Court should affirm that decision.

## ARGUMENT

**A CONVICTION UNDER A.R.S. § 13-1404 IS NOT SPECIFICALLY CATEGORIZED AS A CRIME OF VIOLENCE UNDER ARIZONA LAW NOR DOES IT ARGUABLY QUALIFY AS SUCH UNDER THE ALTERNATIVE, CATEGORICAL APPROACH USED BY THIS COURT; BUT THAT STILL DOES NOT INVALIDATE THE DISTRICT COURT'S SUMMARY JUDGMENT AGAINST OLMOS.**

A conviction under A.R.S. § 13-1404 for sexual abuse does not categorically constitute a "violent crime" under Arizona's general statutory definition found in A.R.S. § 13-901.03, or the definition of "violent or aggravated offenses" under A.R.S. § 13-706; nor would it likely be deemed as such under the categorical approach employed by federal courts. But that cannot be the end of the inquiry here. Just because sexual abuse or molestation of a child can be committed through non-consensual sexual contact without physical injury or the use of a deadly weapon, that does not mean Olmos should automatically be deemed a "lower-level offender" for purposes of assessing the extent of his Fourth Amendment rights, nor does it validate his claim that his rights were violated in this situation. Whether the underlying offense is "violent" or "non-violent" is not dispositive of Olmos's claims. The real issue is whether a valid probation condition existed that permitted the search at issue. The District Court correctly found that it did. That ruling should be upheld.

6

A.      **Arizona Does Not Expressly Categorize a Violation of A.R.S. § 13-1404(A) and (C) as a Crime of Violence, but It Does Define It as a "Dangerous Crime Against Children" and Includes It Among the Most Serious Crimes Deserving of the Harshest Penalties.**

Olmos was convicted of sexual abuse under both A.R.S. § 13-1404(A) and § 13-1404(C), since his victim was less than fifteen years old. Under the version of those statutes in effect in 2005, sexual abuse was defined as "intentionally or knowingly engaging in sexual contact [i.e., 'any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast' A.R.S. § 13-1401(A)(3)(a)] with any person … without consent." A.R.S. § 13-1404(A).

Lack of consent was a foregone conclusion in Olmos's case, since under Arizona law in June 2005, the legal capacity of the victim to consent to sexual contact was governed by Title 13, Chapter 14 of the Arizona Revised Statutes, which treated all sexual contact with minors under 15 as sexual abuse, irrespective of consent. Minors below the age of consent (which was 15 in 2005 when Olmos was convicted and sentenced) were conclusively presumed incapable of consenting to sexual acts, rendering any such contact legally nonconsensual.

This presumption of non-consent aligns with broader policy aims of protecting minors from exploitation, recognizing their naivety and inability to fully understand sexual implications. *See generally,* 6 AMJUR POF 2d 63, 113 AMJUR POF 3d 111. Furthermore, when it comes to sentencing, sexual abuse of a minor

7

under age 15 constituted (and still constitutes) a serious felony that is punishable under A.R.S. § 13-705 as a "Dangerous crime against children" along with:

> … any of the following [offenses] committed against a minor who is under fifteen years of age:
>
> > (i)    Second degree murder.
> > (ii)   Aggravated assault ….
> > (iii)  Sexual assault.
> > (iv)   Molestation of a child.
> > (v)    Sexual conduct with a minor.
> > . . .
> > (ix)   Kidnapping.
> > (x)    **Sexual abuse**.…

A.R.S. § 13-705(T)(1) (emphasis added). In other words, Arizona treats sexual abuse of a child under age 15 as a dangerous, grievous offense that falls into the same category as several offenses that are, by their nature and by definition, violent (e.g., murder, aggravated assault, kidnapping, etc.). This is not a coincidence, and the importance of Arizona Legislature intentionally including sexual abuse of young children in the foregoing list cannot be overstated.

Similarly, while it is true that the crime of sexual abuse under A.R.S. § 13-1404 is not included in the list of offenses constituting "violent or aggravated felon[ies]" in A.R.S. § 13-706(F)(2), which Olmos has cited in support of his argument on this issue, it is notable that the crimes of sexual conduct with a minor under fifteen years of age (a class 2 felony under A.R.S. § 13-1405) and commercial

sexual exploitation of a minor (under A.R.S. § 13-3552) **are** included in that list, even though it is possible to commit both of those offenses **without** violence.

Ultimately, it is Appellee's contention that although sexual abuse is not expressly defined as a crime of violence in Arizona, the existence or absence of violence in the commission of such a heinous and dangerous crime against children is not the *sine qua non* of determining whether the suspicionless search of Olmos's phone violated his rights here. The real question is whether the probation condition imposed on Olmos permitting such searches—which has survived multiple legal challenges by Olmos—provided a valid basis for the search in question. If it did, then Olmos had no reasonable expectation of privacy in the pictures stored on his cell phone and the District Court was correct in entering judgment in favor of Appellees.

**B.    It Is Unlikely That Any Alternative Methodology Would Result in a Determination that Sexual Abuse Under A.R.S. § 13-1404 Is a Crime of Violence, *per se*, but Again, That Does Not Necessarily Resolve the Question of Whether the Search of Olmos's Phone Violated Whatever Fourth Amendment Rights He Might Have.**

If the Court chooses to employ an alternate methodology to determine whether a violation of Section 13-1404 is a crime of violence, it will likely conclude it is not. However, as stated, that conclusion should not be viewed as dispositive of the ultimate question in this case: i.e., whether the District Court erred in granting summary judgment to Appellees. That determination hinges primarily—if not exclusively—on whether the probation conditions imposed on Olmos were valid and

9

permitted the search in question. Appellees respectfully contend that those conditions were valid and the search was not only permissible, but entirely appropriate.

Nevertheless, if the Court chooses to delve further into the question of whether sexual abuse qualifies as a crime of violence, it will most likely apply the categorical approach, which is the controlling analytical framework for making such a determination where a given criminal offense is not specifically defined or classified by a state's criminal code. This can be a complicated analysis and, respectfully, Appellees believe it is an irrelevant and unnecessary exercise for the reasons previously stated and discussed in more detail in Section C below.

### 1. Step 1 – compare the offense to the federal definition.

Under *Taylor v. United States*, 495 U.S. 575, 600 (1990), *Descamps v. United States*, 570 U.S. 254, 261 (2013), and *Mathis v. United States*, 579 U.S. 500, 504–05 (2016), federal courts first compare the statutory elements of the offense to the elements of the federal definition to determine the minimum conduct required to commit the offense and whether violent force is required.

Under the federal definition, a crime of violence generally requires "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 16(a); U.S.S.G. § 4B1.2(a). The U.S. Supreme Court defines physical force as: "violent force—that is, force capable of causing physical pain or injury." *Johnson v. United States*, 559 U.S. 133, 140 (2010). That type of conduct is not required to

commit sexual abuse under A.R.S. § 13-1404. The crime can occur without violent force and is not *per se* a crime of violence. This holds true even though Arizona labels the offense as "dangerous," "sexual," or "serious." *Taylor v. United States*, 495 U.S. at 590–92; *United States v. Dixon*, 805 F.3d 1193, 1196 (9th Cir. 2015).

Furthermore, this Court has repeatedly held that Arizona sexual statutes lacking a force element are not categorically crimes of violence. *See, e.g., United States v. Castro*, 607 F.3d 566, 568–69 (9th Cir. 2010); *United States v. Gomez*, 757 F.3d 885, 897–98 (9th Cir. 2014) (Sexual offenses that can be committed without force do not meet the federal "crime of violence" definition); *United States v. Lopez-Solis*, 447 F.3d 1201, 1206–07 (9th Cir. 2006) (Offenses requiring only touching, without violent force, fail the force requirement). These authorities strongly support the conclusion that sexual abuse under A.R.S. § 13-1404 is not categorically a crime of violence, for whatever that conclusion is worth.

### 2. Step 2 — determine divisibility.

If the statute contains multiple alternative elements, it may be divisible, which may affect the determination of whether it can be classified as a crime of violence. *Mathis v. United States*, 579 U.S. at 505–06. Here, A.R.S. § 13-1404 arguably contains two alternative forms: (a) sexual contact with someone 15 or older without consent; and (b) sexual contact with a minor under the age of 15. If that makes the statute divisible, the Court needs to proceed with a modified categorical approach.

11

### 3. Step 3 — apply the modified categorical approach.

Under the holdings in *Shepard v. United States*, 544 U.S. 13, 26 (2005), and *Descamps*, 570 U.S. at 257, the Court may examine charging documents, plea agreements, jury instructions, and verdict forms for the purpose of identifying which of the statutory alternative forms applies to the conviction. If the chosen alternative still lacks a force element, it is not a crime of violence. In addition to the foregoing, this Court consistently applies a "minimum conduct criminalized" test to see if the statute can be violated in a non-violent way. *United States v. Vederoff*, 914 F.3d 1238, 1243 (9th Cir. 2019); *United States v. Grisel*, 488 F.3d 844, 849 (9th Cir. 2007) (en banc). If it can, it does not constitute a crime of violence.

**C.** **Ultimately, *United States v. King* Does Not Control Here Because Even if Olmos Is Not Deemed a "Violent Felon", He Cannot Be Viewed as a Run-of-the-Mill "Low-Level Offender" and the Search of His Cell Phone Was Conducted in Connection with a Valid Probation Term for a Legitimate Purpose.**

There is no need for this Court to decide whether Olmos's conviction for sexual abuse qualifies him as a "violent felon"; nor does it need to rule on the question posited, but not decided, in *United States v. King*, i.e., whether it violates the Fourth Amendment to conduct a warrantless search of a "lower level offender[] who accepted a suspicionless-search condition" as part of a sentence of probation. Respectfully, that question is irrelevant here because even if Olmos technically does not qualify as a "violent felon" under the law; he most certainly does **not** qualify as a lower-level offender for purposes of *United States v. King*.

Olmos's conviction, sentence, and current situation are not at all comparable to a felon who has been convicted of a non-violent offense (such as drug possession or check forging) and placed on probation for a set amount of time with certain conditions, in lieu of being incarcerated. Olmos was convicted of a **dangerous crime against children** and was sentenced to **lifetime probation** with detailed conditions, including the condition that he would submit to warrantless, suspicionless searches of his electronic devices, including his cell phone, for the purpose of ensuring that he was not in contact with minors or in possession of sexually arousing materials **for the rest of his life**. The trial court also advised Olmos in no uncertain terms that violation of his probation conditions could result in his arrest and the imposition of the sentence of incarceration associated with his conviction for sexual abuse that the sentencing judge had suspended.

Based on that, at the time of the search in question, Olmos was more akin (if not identical) to a parolee as opposed to a mere probationer, since the sentencing judge had reserved the right to revoke his probation and incarcerate him if he violated any of his probation conditions; which is exactly what ultimately happened and why Olmos now finds himself in prison. Therefore, the real question here is whether the suspicionless search of Olmos's cell phone was lawfully conducted pursuant to a valid probation condition and for a legitimate purpose, not whether his underlying conviction involved a "violent" offense.

> **1.** **Whether the underlying offense is "violent" or "non-violent" is not dispositive under *United States v. King* where a valid suspicionless-search condition exists.**

The basic premise seemingly underlying the question asked by the Court appears to be the idea that suspicionless searches are permissible only for persons convicted of violent offenses. But that does not jibe with controlling Ninth Circuit precedent. This Circuit has made clear that the existence of a valid suspicionless-search condition—not the violent nature of the underlying conviction—is the controlling constitutional consideration.

In *King*, the Court upheld a suspicionless search conducted pursuant to a probation condition and explained that the constitutionality of such searches derives from the probationer's diminished expectation of privacy and acceptance of search conditions—not from the classification of the underlying offense as violent or non-violent—although the Court did say that it did not need not to reach the issue of whether such a search would be permissible in the case of low level felons because King's crime was violent.

> We hold **only** that a suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment.

*King*, 736 F.3d 805, at 810 (emphasis added).

Critically, *King* did not hold that suspicionless searches are permissible only as to violent offenders, nor did it establish commission of a crime of violence as a

constitutional prerequisite. Rather, the Court expressly declined to decide broader categories and resolved the case based on the existence of the probation search condition itself:

> We need not decide whether the Fourth Amendment permits suspicionless searches of lower level offenders who have accepted a suspicionless-search condition, because those cases are not before us.

*Id.* Thus, *King* did not impose a crime-of-violence requirement. It merely addressed the facts before it. Indeed, the term "violent" appears only twice in the majority's opinion, and then only to generally **describe** the defendant's crime. *Id.* at 807-10. The factor of violence did not figure in the Court's analysis. *Id.* Moreover, it does not seem logical to find such a requirement as determinative of whether the search here was appropriate under the circumstances.

> **2. Federal precedent confirms that searches such as the one conducted in this case are constitutional where, as here, they are done under a valid and sufficiently specific probationary condition, regardless of whether the underlying offense involved violence.**

In *United States v. Knights*, 534 U.S. 112, 119–20 (2001), the United States Supreme Court held that probationers subject to search conditions possess a significantly diminished expectation of privacy. Likewise, in *Samson v. California*, 547 U.S. 843, 850–52 (2006), the Supreme Court upheld suspicionless searches of parolees even absent individualized suspicion, emphasizing the broad supervisory authority over supervised offenders, stating that: "Parolees are on the 'continuum'

15

of state-imposed punishments … and thus have severely diminished expectations of privacy by virtue of their status alone." Neither *Knights* nor *Samson* imposed any requirement that the underlying conviction be violent and, as noted above, at the time of the search, Olmos was, for all intents and purposes, in the same status as a parolee or, at the very least, far closer to that status along the "continuum" referenced in *Samson* than to "lower level offenders" sentenced to a temporally finite term of probation.

Also, consistent with this framework, this Court has repeatedly upheld suspicionless searches even of more typical probationers based on search conditions, without requiring proof that the predicate offense involved violence. *See, e.g., United States v. Lara*, 815 F.3d 605, 610–11 (9th Cir. 2016) (upholding probation search under search condition; emphasizing diminished expectation of privacy rather than violent nature of offense); *United States v. Cervantes*, 859 F.3d 1175, 1181–82 (9th Cir. 2017) (probation search condition significantly reduces expectation of privacy; reasonableness determined under totality of circumstances). These authorities confirm that probationary status, the purpose of the search, and the specificity of the probation conditions—not the violent nature of the offense—are the operative constitutional factors.

Here, one of the conditions of Olmos's lifetime probation was submitting to warrantless searches of his electronic devices, with specific reference to his cell phone, for the purpose of ensuring his long-term compliance with the two primary,

16

overarching conditions of his probation: namely, that he avoid all contact with minors and that he never possess any sexually stimulating or arousing material. Random, warrantless searches of the contents of his computer and cell phone are the best—indeed, the **only**—way to ensure that ongoing compliance.

### CONCLUSION

Under controlling Ninth Circuit and Supreme Court precedent, the constitutionality of a suspicionless search turns on the existence, specificity, and scope of a valid probation search condition and the subject's reasonable expectations of privacy, if any; **not** on whether the underlying conviction involved a violent offense. Here, the search of Appellant's cell phone was authorized under a specific condition of his sentence of **lifetime** probation that severely diminished any privacy expectations Olmos could have reasonably had, and it was conducted for the legitimate purpose of ensuring Olmos's compliance with valid restrictions imposed on him for committing a dangerous crime against a child. The District Court correctly ruled that Appellees did nothing to violate Olmos's rights entered summary judgment in their favor. That ruling should be upheld by this Court.

**RESPECTFULLY SUBMITTED** this 5th day of May 2026,

WILENCHIK & BARTNESS, P.C.

*/s/ Dennis I. Wilenchik* (#005350)
Dennis I. Wilenchik, Esq.
Tyler Q. Swensen, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Appellees Prieto & Hernandez*

## <u>CERTIFICATION AS TO RELATED CASES</u>

The undersigned certifies that he is unaware of any other known related cases

or appeals, except for the underlying proceedings related to this appeal.

**DATED** this 5th day of May 2026.

WILENCHIK & BARTNESS, P.C.

<u>/s/ *Dennis I. Wilenchik* </u>(#005350)
Dennis I. Wilenchik, Esq.
Tyler Q. Swensen, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Appellees Prieto & Hernandez*

18

## CERTIFICATE OF COMPLIANCE WITH RULES

1.  This brief complies with FRAP 32, as modified by Rule 28-1 of the Ninth Circuit Rules, and contains 4,051 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

**DATED** this 5th day of May 2026.

WILENCHIK & BARTNESS, P.C.

/s/ *Dennis I. Wilenchik* (#005350)
Dennis I. Wilenchik, Esq.
Tyler Q. Swensen, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Appellees Prieto & Hernandez*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system May 5, 2026.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ *Alice Nossett*