

Trial **&** Appellate

Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

May 5, 2026

VIA ECF

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re:    *Olmos v. Cimino, et al.*, No. 23-15685
      Set for oral argument May 21, 2026

Dear Ms. Dwyer,

This Court's request for supplemental briefing includes two questions, but the answer to the first question eliminates any need for the Court to reach the second—Arizona state law does not characterize Olmos's underlying crime as violent. Appellees repeatedly concede this in their own Letter Brief (Doc. 138), saying that Appellant's underlying crime "does not categorically constitute a 'violent crime'" under Arizona state law, *id.* at 6; that it does not meet "the definition of 'violent or aggravated offenses' under" state law, *id.*; and that it "is not expressly defined as a crime of violence in Arizona," *id.* at 9. That's correct, and should end the inquiry.



**ALL RISE**

Trial & Appellate

Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

To whatever extent the Court believes that Arizona's own categorization does not provide a complete answer despite Appellees' concession, alternative modes of analysis have shortcomings. The most obvious alternative, the modified categorical approach, is difficult to apply to language in *King* because that approach requires a statutory (or at least a Sentencing Guidelines) comparator—and reaches different results in comparison to different statutes depending on the precise text at issue. Moreover, because Appellant's underlying violation was of a divisible criminal statute, the modified categorical approach requires reliable documents from the underlying trial to undertake the analysis properly—documents not in this record. This further counsels in favor of resolving the question as one of Arizona state law, and answering in the negative. Appellant would also briefly note, however, that regardless of the answer to the question of whether his crime was violent, his probation agreement did not include a suspicionless-search condition—so the *King* formulation would not authorize the search here even for a probationer who had committed a violent felony.



**ALL RISE**

Trial & Appellate

Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

**1.** As Appellant explained briefly in both his Replacement Opening Brief (Doc. 113) and his Reply Brief (Doc. 128), Arizona state law provides an answer to this Court's question. That state has a statutory provision, Ariz. Rev. Stat. Ann. § 13-706(F)(2), which defines "violent or aggravated felony" to include a list of crimes that does not include Olmos's underlying statute of conviction, Ariz. Rev. Stat. Ann. § 13-1404 (Sexual abuse; classification). Close examination reveals that the failure to list Appellant's underlying crime as violent is intentional rather than an inadvertent omission—the categorization statute specifically lists "sexual conduct with a minor that is a class 2 felony" on the list of violent crimes. Ariz. Rev. Stat. Ann. § 13-706(F)(2)(i). The sexual abuse statute under which Appellant was put on probation, by contrast, specifies that "[s]exual abuse is a class 5 felony unless the victim is under fifteen years of age in which case sexual abuse is a class 3 felony[.]" Ariz. Rev. Stat. Ann. § 13-1404(c). (In Arizona, class 1 is the most serious class; class 2 is more serious than class 3 or class 5.) So besides not being listed specifically, the closest general comparison reveals both that the



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

legislature considered sexual conduct with a minor, and that it categorized such conduct as violent only at higher levels than outlined in § 13-1404.[1]

The § 13-706 statute provides further support for the conclusion that § 13-1404 is not violent. In their Supplemental Answering Brief (Doc. 119), Appellees chose to emphasize the "seriousness" of § 13-1404. *E.g.* Doc. 119 at 13-16. But the focus on "seriousness" misses the point, because the categorization statute separates "serious offense[s]" from "violent or aggravated felony" offenses. *Compare* Ariz. Rev. Stat. Ann. § 13-706(F)(1) *with id.* at § 13-706(F)(2). Treating the "serious offense" portion of the § 13-706 statute as resolving the question of whether such offenses are violent would run afoul of numerous canons of statutory interpretation. It would render the separate list of violent crimes mere surplusage, and would ignore the *expression unius est exclusio alterius* canon, which counsels that setting out delineated lists implies the

---

[1] Appellees' Letter Brief emphasizes that Appellant is on probation for a lower-than-class 2 felony. Doc. 138 at 3-4; *id.* at 4 (explaining that Appellant's probation was for the class 3 felony under § 13-1404).



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

exclusion of items not included on them. *E.g.* Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012), at 107, 174. Indeed, Appellees apparently believe it significant that other crimes involving sexual conduct with minors separate from § 13-1404 are included on the violent and aggravated felony list. Doc. 138 at 8-9. They're half right; it is significant, but because it underscores that the legislature could have included § 13-1404 on that list, but did not.

Other cross-references within Arizona criminal law only bolster this conclusion. The § 13-1404 statute's classification subsection itself refers to Ariz. Rev. Stat. Ann. § 13-705, a state sentencing guidelines statute for "Dangerous crimes against children." But as with the § 13-706 statute, "dangerous" does different work than "violent." Indeed, Appellees referenced a prior version of that statute in their Answering Brief, Doc. 119 at 14, and in doing so only revealed the problem with conflating "dangerous" and "violent" when they argued that "virtually all" of the crimes there involve violence. Another way of putting it is that some involve violence, and others do not. *Compare* Ariz. Rev. Stat. Ann.



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

§ 13-705(T)(1)(xv) ("Attempted first degree murder") *with id.* at § 13-705(T)(1)(xxi) ("Unlawful age misrepresentation"). Appellant's underlying offense is undoubtedly serious, but the Arizona state legislature has chosen in numerous statutory provisions not to categorize it as violent. Appellees concede this. Doc. 138 at 6-7.

**2.** If the Court rejects any reliance on Arizona state law, precedents suggest that it could analyze the relevant divisible portion of the § 13-1404 statute under the modified categorical approach. Appellees urge the Court not to undertake this analysis, calling it "irrelevant and unnecessary," Doc. 138 at 10, and apparently conceding that under this approach the § 13-1404 statute would not categorically qualify as a crime of violence. Doc. 138 at 10 (calling § 13-1404 "not *per se* a crime of violence" under the categorical approach). To whatever extent the Court even reaches this question, that concession should control.

Appellant separately observes, regardless, that the modified categorical approach has analytical shortcomings in this context, and the Court should therefore hesitate to use it here for several reasons,



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

including that *King* is not a statute and its text does not have elements for a proper comparison. Beyond that, § 13-1404 is a divisible statute, and so application of the modified categorical approach requires reliable trial court documents that do not exist in this record. So if, despite Appellees urging against it and the other shortcomings, the Court still believes it applies, it should remand to the District Court to undertake the analysis in the first instance, including after record development.

Before choosing the modified categorical approach over the straightforward application of Arizona's own law, this Court should consider the numerous reasons counseling against that analysis. For one thing, the categorical approach and its "not very inventively" named variant the modified categorical approach, *Descamps v. United States*, 570 U.S. 254, 257 (2013), apply when courts seek to determine criminal consequences pursuant to statutes. That includes, for example, sentencing enhancements under the Armed Career Criminal Act, *see id.* at 258, 18 U.S.C. § 924(e), *United States v. Taylor*, 495 U.S. 575 (1990); or immigration consequences under the Immigration and Nationality



Jim Davy, Principal                                                  P.O. Box 15216
All Rise Trial & Appellate                                  Philadelphia, PA 19125

Act, *see e.g.*, *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 388 (2017). The reason that the *Taylor* Court established the categorical approach was because the use of "violent felony" in the text of the ACCA statute risked imposing consequences on people for conduct they could not have known was unlawful; the categorical approach ensures that defendants do not face criminal punishment as to conduct which was not proscribed under some statute.

To the contrary, however, courts have never used the categorical or modified categorical approach to consider whether people lose or face restrictions on Constitutional rights based on the text of a judicial opinion. As the Sentencing Commission has explained, "*Taylor* and subsequent Supreme Court cases regarding the categorical approach apply only to statutory provisions," and while Circuits have similarly applied them to the Sentencing Guidelines anyway, both statutory provisions and the Guidelines differ in kind from the text of a judicial opinion that purports to restrict rights solely or primarily on the basis of someone's underlying offense. *See* Primer: Categorical Approach, United



**ALL RISE**

Trial & Appellate

Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

States Sentencing Commission Office of the General Counsel (2025), at 1-2 & n.6.

Separately but relatedly, the lack of a comparator statute or even a comparator Guideline makes the categorical approach especially in-apt. The point of the categorical (or modified categorical) approach is to compare the elements of a state crime with the elements of a federal crime that federal statutory law defines as "trigger[ing] a higher penalty or enhanced sentence for [an] instant offense." *Id*. at 4. Numerous federal statutes provide for different types of enhanced penalties, including based on prior crimes involving violence and at different levels of mens rea. *Compare, e.g.*, 18 U.S.C. § 924(e) (providing for higher penalties for firearm offenses if someone has multiple prior "violent felonies") *with* U.S. SENT'G COMM., GUIDELINES MANUAL §§4B1.1, 4B1.2 (Nov. 2024) (increasing penalties for people with multiple prior "crimes of violence"). Here, there is no comparator statute; the "violent felony" mention in *King* appears to be a colloquial term rather than an element-based text that would allow for a meaningful comparison, and it renders categorical



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

approach precedents correspondingly unhelpful. *See, e.g.*, *Johnson v. United States*, 559 U.S. 133, 140 (2010) (holding that under the ACCA "physical force against another" must necessarily involve "force capable of causing physical pain or injury"); *Borden v. United States*, 593 U.S. 420, 429-30 (2021) (plurality) (holding that crimes people can commit with a *mens rea* of only recklessness are not categorically violent for ACCA purposes).

Against that backdrop, Appellant further observes that when this Court has had the occasion to discuss the underlying § 13-1404 Arizona sexual abuse statute here—as when assessing whether a conviction under § 13-1404 qualifies as a crime of violence under the U.S. Sentencing Guidelines, for example—it has applied the modified categorical approach because it is divisible. *United States v. Quintero-Junco*, 754 F.3d 746, 752 (9th Cir. 2014) (discussing how defendants "can violate the statute in two distinct ways," and how "the statute lists potential offense elements in the alternative"). At the moment—and understandably, since neither the Parties nor the District Court knew



**ALL RISE**

Trial & Appellate

Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

that such an analysis might become necessary—the record lacks the sort of documents allowed for consideration under the modified categorical approach, "including the record of the plea colloquy" or other reliable trial court documents that would reveal the nature of the underlying conviction. *Descamps*, 570 U.S. at 259. If the Court believes the modified categorical approach is the correct analysis, then, it should remand for the District Court to undertake that fact-finding in the first instance.

The divisibility matters in part because in considering the § 13-1404 sex abuse statute even as to other comparators, this Court has held only—and correctly—that people who have been "convicted under the first prong" have committed a crime of violence, and even then only for the purposes of the U.S. Sentencing Guidelines. *Quintero-Junco*, 754 F.3d at 752. The first prong criminalizes "intentionally or knowingly engaging in sexual contact with any person who is fifteen or more years of age without consent of that person[.]" *Id.*; Ariz. Rev. Stat. Ann. § 13-1404(a). The second prong criminalizes "intentionally or knowingly engaging in sexual contact . . . with any person who is under fifteen years



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

of age if the sexual contact involves only the female breast." *Id*. What information does exist in the record—to be clear, not the reliable documents required—suggests Appellant was convicted under the second prong. *See* 2-ER-158, 2-ER-42 (describing victim age, which makes only the second prong applicable). Especially in the absence of an obvious textual comparator, as Appellees themselves concede, it's possible that someone could violate § 13-1404 under the second prong without resorting to physical force or violence—"[t]hat type of conduct is not required to commit sexual abuse under A.R.S. § 13-1404." Doc. 138 at 10-11; *see also id.* at 11 ("These authorities strongly support the conclusion that sexual abuse under A.R.S. § 13-1404 is not categorically a crime of violence").

**3.** Appellant would also observe, however, that even if this Court determined under any mode of analysis that § 13-1404 is a crime of violence, that would not completely resolve the question on appeal. This Court's Supplemental Brief order quotes a portion of *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013) that seemingly reserves the



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

question of "whether the Fourth Amendment permits suspicionless searches of . . . lower level offenders who have accepted a suspicionless-search condition, because those cases are not before us." Doc. 131 (quoting *King*, 736 F.3d at 810) (alteration in Doc. 131); *see also Smith v. City of Santa Clara*, 876 F.3d 987, 993 n.6 (9th Cir. 2017) (mentioning that open question). Appellees suggest that *King* conceivably allows suspicionless searches even of non-violent offenders. Doc. 138 at 14-15. But *King* only reserved that question because it refused to hold that even non-violent probationers who had purportedly agreed to suspicionless search conditions could constitutionally be subject to such searches. And conversely, violent probationers need have agreed to such a condition to face such suspicionless searches.

This matters particularly because as Appellant has explained, he did not accept a suspicionless search condition, he accepted only a warrantless search condition. *See* Doc. 113 (Replacement Opening Brief) at 17-20; Doc. 128 (Reply Brief) at 9-10. Appellees agree. Doc. 119 (Supplemental Answering Brief) at 7 (explaining that Appellant's



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

"probation conditions also specifically required him to submit to warrantless searches of his electronic devices probation conditions also specifically required him to submit to warrantless searches of his electronic devices"), 15-16 (describing Appellant's "acquiescence to warrantless searches"), 18 (same), 22 (same); Doc. 138 at 16 ("one of the conditions . . . was submitting to warrantless searches").

Arguments to the contrary based solely upon background provisions purportedly incorporated by reference would only raise other problems. This Court has explained as to federal sentencings that "suspicionless search conditions of this sort should not be routinely imposed," and cautioning that District Courts may only do so "if applicable statutory requirements are met and the search condition is consistent with the Sentencing Commission's policy statements." *United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017). Indeed, this Court has long questioned the constitutionality of so-called "Fourth waivers," which purport to signify a "parolee's consent to a search by any law enforcement officer, with or without cause." *United States v. Crawford*, 372 F.3d 1048,



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

1051 (9th Cir. 2003). Moreover, to put a probationer on sufficient notice of the rights he gives up, any suspicionless search condition must have sufficient clarity to authorize such searches. *E.g. United States v. Johnson*, 875 F.3d 1265, 1275 (9th Cir. 2017) (describing on sufficiently clear condition as telling a parolee—not a probationer—that he "could be searched 'at any time of the day or night, *with or without* a search warrant or *with or without cause*.'") (emphasis added by the *Johnson* Court); *see also Crawford*, 372 F.3d at 1051 (same). And at least for federal probationers, such broad conditions are only allowed when a court "adequately explain[s] why the condition was necessary in this case." *E.g. United States v. Feldman*, 629 F.App'x 805, 807 (9th Cir. 2015) (unpublished). Appellees' position would subject tens of thousands of probationers to suspicionless searches on a non-individualized basis merely because of their underlying crime—a result not countenanced by *Cervantes* or *Johnson* or *Crawford*, unpublished cases like *Feldman*, or ultimately, the Fourth Amendment.



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

Appellees' briefing raises an additional problem. Regardless of the search term involved, this Court has held that even where probationers have agreed to expansive conditions that clearly authorize suspicionless searches, officers must actually know of that condition before undertaking a suspicionless search. *E.g. United States v. Estrella*, 69 F.4th 958, 965 (9th Cir. 2023); *Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005). Even in their briefing before the Court, Appellees evince no knowledge of a suspicionless search condition—repeatedly characterizing it as *warrantless*. *E.g.* Doc. 119 at 7, 15-16, 18, 22; Doc. 138 at 16. So under the circumstances, at minimum, a reasonable jury could conclude that even if there had been an explicit search condition authorizing a without-cause search, Appellees did not know that they undertook their avowedly suspicionless search here pursuant to such an explicit search condition. That would doom their search, especially on the procedural posture here.

\* \* \*



**ALL RISE**

Trial & Appellate

Jim Davy, Principal                                               P.O. Box 15216
All Rise Trial & Appellate                          Philadelphia, PA 19125

This Court should resolve the question here in simple reference to Arizona state law, which—as Appellees concede—does not characterize Appellant's underlying crime as one of violence. In addition to offering a straightforward solution to a problem that best respects the principles of reliance and required notice to probationers, it avoids a messy application of the modified categorical approach in the absence of a statutory (or even Guidelines) comparator. If this Court does nevertheless want to apply the categorical approach, it should remand for the District Court to undertake that analysis in the first instance in reference to appropriate reliable documents, because the underlying Arizona state statute is divisible.



Jim Davy, Principal
All Rise Trial & Appellate

P.O. Box 15216
Philadelphia, PA 19125

Respectfully submitted,

/s/ Jim Davy
Jim Davy[2]
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
215-792-3579
jimdavy@allriselaw.org

*Pro bono* counsel for Appellant

CC: all counsel of record

---

[2] Jim Davy is temporarily supervising the Boston University Appellate Clinic as a Visiting Lecturer for the 2026 Spring Semester. He otherwise maintains an active practice of law before this Court and other U.S. Courts of Appeals. If it is possible, in this case only, for him to use a different counsel block without that affecting his appearances across other cases before the Court, he would use this:

Jim Davy
BOSTON UNIVERSITY
 APPELLATE CLINIC
765 Commonwealth Ave.,
 Suite 1304
Boston, MA 02115
(617) 835-0884
jimdavy@bu.edu